The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Please be seated. In our final case, number 23-2013, Sigley v. ND Fairmont, Mr. Glazer. Good morning, Your Honor. May it please this Honorable Court, Justice Richardson, King, Floyd, Counsel, Mr. Gray. It's my honor to represent my client. My name is Hoyt Glazer. And we are on appeal here on some pretty simple issues, although I do think they pose interesting questions. The main issue is whether the district court committed clear, reversible legal error in ruling that the defendant, the appellee here, did not discriminate against my client, Mr. Sigley, when it fired him for not previously disclosing his medical information on a health questionnaire. Now, what's interesting about this case, first, is that there's really no dispute on the facts. We've stipulated to a lot of the facts, so there's not a factual dispute here that you have to decide. Rather, it's the application of the law. And I'll cut to the chase here, Your Honors. In this case, the district court said, look, this is a matter of a stand-alone claim under the ADA for breach of confidentiality. And said there was no breach of confidentiality, and therefore there's no ADA claim. And I submit to you that's clearly wrong, because this was a standard ADA claim. In fact, we have alleged that there was an improper... Does it protect an employee for lying to the prospective employer? Yes, Your Honor, it does under these circumstances, and I may elaborate. The ADA says that you cannot have an improper medical inquiry that involves anything that would lead to information about a potential disability, potential or otherwise. Here's what is interesting about the ADA, that medical inquiry provision protects every employee, not just disabled employees, but also employees that are not disabled. And that ties into the reasonable accommodation aspect of this claim. My client didn't disclose. He lied, and that's not a doubt here. And there are reasons for that, but... When did you ask for an accommodation? Okay. My position is that he was doing the job, and he didn't... When did you ask for an accommodation? I do not believe that that issue was... I don't believe he specifically asked for an accommodation in the sense of he was looking to be accommodated, if that makes sense. We didn't really develop evidence on that. It's the employer's position that he didn't ask for an accommodation. It's my position that if the employer was going to do anything here, it had really three options. The first option is, do you need any help, Mr. Sigley? Let's see what we can do. Your view is that the ADA requires the employer to determine whether accommodation is warranted even when it's not requested? So they sort of are a roving band of accommodation providers? I need to go find my law clerks and walk through on a daily or quarterly basis? Are you good? Is everything good? You said you need a backrest, or you need a different kind of pen? My answer to that is, they're not a roving band. They're not required to read minds, Your Honor, and they're not required to do that. What they are required to do is, they are required not to discriminate. And what that means is, what they can't do here is, what they can't do is... Well, how does accommodation get in here? How can they get an accommodation issue in here if you didn't ask for it, but you were obliged to? Did the judge have some roving writ to raise accommodation for you? Do we have some roving writ to let you raise it on appeal? You actually first raised it, I think, in your summary judgment request. Correct. You didn't raise it in your complaint. You didn't raise it with the employer. You raised it in your summary judgment request after discovery. As I recall, on this record, that's what it reflects about accommodation. Is that fair? If it's not, correct me. We raised discrimination based on perceived as disability. I'm talking about the accommodation claim. For the purposes of this appeal, and for the purposes of this claim, I would say that accommodation is not an issue. But if the court believes that we didn't raise it, I'm not going to argue against that, because I don't think it's dispositive of this appeal, or what the judge decided. When you say in your brief the appellee violated its mandatory duty of reasonable accommodation under the ADA, we can delete that section of the brief? That section applies to the argument I'm making. What I mean is this. When he says I have a back injury, if he says he has a back injury, the question is really this. Is that sufficient to say I need an accommodation? Now, that was not developed on the evidence. That was not developed below. It's my position that it didn't need to be developed, because medical inquiries are prohibited. Medical inquiries, that's the only thing that this court needs to answer and that the court below did not address. The medical inquiry itself is violative of his right, and it doesn't matter whether he requested accommodation. I would tell this court that the reasonable accommodation issue, honestly, I would say he didn't ask for a reasonable accommodation in the sense that we developed it. He didn't ask for it. He didn't sue for it. He didn't sue for it. He didn't ask for it. But you briefed it to our court that that was a violation of the law not to accommodate. Well, and the reason is because You used a big part of your brief to talk about it. Because it goes to part of the decision. And even in the district court, you didn't sue, you didn't complain, you raised it in your summary judgment motion. Yes, Your Honor. For the first time. Because it has to do with the idea of the protections under the law, the stereotypes, and the perceptions. As a matter of fact, your summary judgment motion raised two issues, neither of which were in your complaint. Well, I believe, I mean, our complaint was for discrimination under the ADA. We have established that the reason they fired him was because they said he didn't disclose that he had this condition. And the question is They fired him for lying. They fired him for lying. But the point is, Congress and the ADA does not prohibit someone from not divulging what they said he should have divulged on the application. That's the whole gist of this. So you're going to have us say the ADA protects you for lying. No, Your Honor, that's not what I'm saying at all. Because you're lying to the prospective employee. That's not what I'm saying. What I'm saying is That's pretty hard. I'm sorry? That's a pretty difficult proposition to market. Well, I'm not arguing that the point of this is that he should have been able to lie. The point of this is that ADA protects people from perceptions about what they can or can't do. Mr. Sigley did not disclose this. Now, here's what's very important. I've argued this before, and I've argued this in the brief. Is there a difference between not disclosing and outright lying? I don't think there is. I mean, I'm not going to I know you want to say he didn't disclose it. But you agree he lied. Absolutely, Your Honor. I'm not going to even argue that to this court. I mean, that's not Can I ask maybe a similar question to Judge King? If, this is hypothetical, right? So just take the ifs, right? So if I found that they were permitted to ask him the question, and they were permitted to rely on his lie to fire him. Right? And I know you argue against that. But if I found those two things contrary to your view, is that dispositive? So they could ask him, and they could look at what he said in the forum and say he's a liar. If I made those two determinations, is that dispositive? I understood the district court to say that would be dispositive of your discrimination claim. And I don't see you arguing to the contrary, but I want to make sure. If the court were to find that he lied, and that they could fine him for lying, and I do believe I addressed this, but if I didn't, let me make clear. It's all embedded in the condition. It's inextricably linked. In other words, if he In the condition? I don't understand. Well, what he says So start with yes or no. Okay. If I find that they were permitted to ask him about his back, and that he lied about it, and that they were permitted to fire him for lying about his back on the forum, and in any other context. If I found those three things, and you challenge all of those. I totally understand you're challenging. My question is, if I disagree with you on all three points, is that dispositive? If he lied, you found that he lied. You admit he lied. Absolutely. We're not even arguing about that. He lied. And that they fired him for lying, which I don't think is an issue here either. Is that dispositive? And my argument would be, under the ADA, no, because the question is, was the medical In other words, could they ask him about his back injuries? They checked to see whether he told the truth. My position is, they could have referred him out for an exam. They could have asked him more questions about his back injury. They could have done that. And I realize the accommodation issue, and that's how it plays into the argument. It's for an argument that I'm raising this. In other words, if they believe that he was having an issue, the answer is, was he lying? That's not dispositive, in my opinion. The dispositive is whether they fired him based on his disability or perception of his disability. In other words, they believe that he lied, he violated, we can fire you because you lied. You had back injuries, and you didn't tell the truth about that. But the point is, Did they tell him directly, we're firing you because you lied? That's what they told him. That's what they told him. And that's what this record says. Correct, and that's what my client understood. His deposition was not taken, but that's my understanding. They said, you falsified records, you signed all these different places where you acknowledge that's our policy. You said that you understood that, you didn't disclose, we're firing you, that's it. So you think we should go beyond that and see through it? Absolutely, because here's the thing. The result may be something that I don't use the word abort, but it may be an unpleasant result here. In other words, as you said earlier, Your Honor, is it right that we allow somebody that lied, and they fired him for lying, and is that what the ADA really allows? And I would submit, and I have argued this, that Congress has not said, you know, you can fire somebody if they don't disclose on a health questionnaire. They haven't said that. And the Blanco case says that, too. That's up to Congress. They didn't have an exception that if you lie, you lose the protections under the medical inquiry protection. Medical inquiry protects everybody, disabled or not. It protects us all. Now, the fact of the matter is, if they had gone about this a little more carefully, then I don't think we'd be here if they said, okay, Mr. Sigley, we're going to give you a physical, you're going to be referred out, we want to see what you can do. What would they, I don't understand that argument, right? So why would they have referred him out? They fired him because he's a liar, not because of any other reason. They don't need to send him to another doctor. Like a doctor, I mean, they might want to send him to an FBI agent who runs a polygraph, right? But sending him to a doctor doesn't do anything because they're not firing him for that. They're firing him because he lied. What was the, why would they send, I just don't understand the argument. I'm trying to understand the argument. Very simply, it's my position that the employer did not recognize that they could not do what they did. And I understand this court has an issue with him lying, but the solution is. They did not recognize that they couldn't do what they did. So can you fill in some of those. Absolutely. Pronouns, right? Yes, sir. They couldn't fire him for lying? Not under these circumstances. And just to put a point on it for me, why? Because. Did you list your arguments for why that is? Yes. When they ask him about, did you disclose your medical condition on your health questionnaire, that is a prohibited medical inquiry under the ADA. Okay, they couldn't ask. They couldn't ask. I understand that. What's the next argument? But when they pursued it and they determined whether he did, they're not determining anything about what he can or can't do. They're just trying to figure out if he's honest or not. And they're not allowed to determine whether he's a liar. Okay, what's the third argument? And that's it. I mean, they can't do that, Your Honor. I mean, the ADA. So in other words, your argument is really, when we think about McDonnell Douglas, your argument is a step two argument. That they cannot give a legitimate reason for firing him. If I may? Yes. I think their reason for firing him was not legitimate, per se, because the ADA says you can't have a prohibited. In other words, they're basically saying, I mean, this is the extent, is that he basically waived his right to his ADA protections when he says, I understand you can fire me for not telling the truth. That's essentially important what they're saying, Your Honor. I mean, again, and I know my time's up, so I'll stop if you want. Finish your answer. Yeah. So, again, I think it may be, you know, yes, he lied. But at the end of the day, the ADA doesn't prohibit what he did. But it does prohibit the employer from firing him for just lying under these circumstances. Thank you. You've got some rebuttal time. Yes, sir. Let's see what Mr. Gray has to say about this. Good morning, Your Honors. My name is Kelby Thomas Gray from Dinsmore & Scholl in Charleston, West Virginia. It's an honor and privilege to be here today, and I represent N.D. Fairmont in this appeal. I had an argument, but I kind of want to address some of the questions you all asked earlier. The first one was asked by you, Judge King, does the ADA protect someone from lying? And the answer to that is no. The Fourth Circuit, this court, has held that misconduct, even misconduct related to a disability, is not itself a disability and may be grounds for termination. That was in Neal v. Eastern Carolina University. The Fourth Circuit decided that back in 2022. In 1999, the Fourth Circuit decided, Jones v. American Post, a workers' union, and the Fourth Circuit determined that the ADA is not violated when an employer discharges an individual based upon the employee's misconduct, even if the misconduct could be related to a disability. Then in Hannah P. v. Coates, the Fourth Circuit stated, the ADA does not require an employer to simply ignore an employee's blatant and persistent misconduct, even where that behavior is potentially tied to a medical condition. In that case, Your Honors, it was Hannah P. v. Coates decided by the Fourth Circuit in 2019. So that's to address your first question, Judge King. The second question was, when did he ask for an accommodation? He never did. He never asked for an accommodation. He briefed that, or made that request, raised it in the summary judgment motion. That is correct, Your Honor. And was there anything in the summary judgment motion that was raised in the complaint? No, Your Honor. Was there ever a motion to amend the complaint? No, Your Honor. Well, how can he raise the issues in the summary judgment request that weren't sued for? He can't. So are you saying we should affirm the district court? Yeah, I'm saying you should affirm the district court's grant of summary judgment. Is that the right request, or should we dismiss if there's no match with the complaint? I'm saying in the Fourth Circuit, I'm asking the court to affirm the district court's decision. I know your answer is to affirm it. I just wondered if that's the right request. Your proper request is to dismiss. It could be. Maybe that's what should have been your motion in the district court. Summary judgment request didn't match the complaint. He didn't move to amend the complaint. No, he didn't. Don't we have law? You can't do that. I have law. Your Honor, I can't tell you the case, but I've had some other cases in federal courts in West Virginia where a plaintiff has tried to do that at the summary judgment stage. We filed the responses, and the summary judgment decision by the... The complaint was not amended by operational law or anything by way of a mismatch when you have a motion for summary judgment, I don't think. That's what troubles me about this, whether any of the issues on the field, whether they should be dismissed, whether the court should be affirmed, what we do with the appeal, maybe dismissal alternative. But you wanted to affirm. I would like the district court's decision granting summary judgment to Andy Fairmont affirmed. You filed the motion for summary judgment addressing the claim that was raised in the complaint. Yes. Yes, Your Honor. Even in his appeal brief to this court on page 5, he states, Mr. Sigley filed a one-count ADA claim against the penalty asserting disability discrimination. And so your view of the... I know there are a bunch of these other arguments below and on appeal, accommodation and the like. Your view of those, they're not separate claims. They're arguments that your colleague is making. They might be irrelevant arguments, but they're simply arguments about a single discrimination claim. Okay. And then I want to reiterate what he said there, Your Honor. Mr. Sigley admits, his counsel admits that Andy Fairmont fired him for lying. Mr. Glazer mentioned that the ADA protects perception. And I would respond to that with the only thing that Andy Fairmont perceived was that Mr. Sigley was dishonest. He mentions the... Would this be different if there wasn't a voluntary... So I understand under HANAPI that this protection does not protect information shared voluntarily, right? This confidentiality provision. And here he both admits that he lied and then there's a record that shows that he lied. But if we didn't have that admission that he lied, the first go-around, this disclosure and admission, would that have been a problem? It may have been. So without that admission, if they had just gone back to the original form? If they had started making an inquiry, it may have been, Your Honor. But this was different in the case that he voluntarily disclosed his medical information and history to Andy Fairmont. Let me ask you this question. I'm not sure I quite understand what I'm asking anyway. Are applications of post-hire exams, are they governed by different ADA provisions? Yes, Your Honor. There's different provisions for pre-employment. And then there's provisions for what I call the post-offer examinations or employee employment entry examinations. So... And then there's a different provision for... So what he alleged was, I think he just alleged an improper medical inquiry. Is that sufficient to get to both of those issues? I'm not sure if I understand the question. I'm not sure how to ask it. Yeah, I think that he's... Under 12112D, it has different provisions for medical examinations and when you can do those and at what time, okay? The first one regarding is pre-employment. I think he's focusing on the pre-employment portion of that statute. But what we're focusing on and even what he briefed and what the district court focused on was 12112D3 that talks about employment interest examinations. And it states this. A covered entity may require a medical examination after an offer of employment has been made to a job advocate. And prior to the commencement of the employment duties of such an applicant and may condition an offer of employment on the results of such examination. Well, just help me along. You may be right that he's focusing on the first one. But suppose he's focusing on both of them. Does it make any difference to the outcome of this case? Both provisions. Well, I would say... I don't think the first section regarding the pre-employment is at issue, Your Honor. Just because he concedes and there are stipulations in the record where he concedes that his application that he submitted for employment with Indy Fairmont requested no medical information whatsoever. And it was lawful. So I don't think that first section applies. We didn't violate that. I don't think there's any dispute on that. Can you help me understand, I think I know the answer to this, but why a sort of post-offer interest exam is permitted? Is this a workers' comp issue? I mean, are we trying to develop a baseline? I mean, I guess what I'm trying to figure out, it seems like to me the reason that your client cares about him lying about his back injury is maybe significantly about workers' comp, right? He doesn't want to hire people who have pre-existing injuries and then have them come in and dishonestly claim that that injury resulted from their work? I don't know. Is your answer, what is the purpose of... Yeah. I don't know what the purpose of it is, Your Honor, but I know the ADA allows it. And it allows employees... There's nothing in the record as to what. I mean, I just... No. Again, it's not totally relevant, but there's nothing in the record that tells us why they care about the lie. They conduct these employment examinations for all applicants, all new employees prior to the commencement of job duties. It's routine. It's routine, Your Honor. And the record indicates he was able to do his work. He was. And we were talking about the voluntary disclosures, Judge Richardson. I would also point the Court to another case that you all decided, Reynolds v. American National Red Cross. It was decided by this Court back in 2012, and the Court affirmed summary judgment in favor of the employer on the plaintiff's ADA confidentiality claim where the plaintiff voluntarily disclosed his medical information. And in this case, the medical information and the history relating to Mr. Sigley's back condition and treatments were voluntarily disclosed by Mr. Sigley. That's not in dispute. Is your view that once he does that, that means the record itself, the employee entrance exam record itself is no longer confidential because he's now disclosed that information? That is correct, Your Honor. And that's what the Fourth Circuit has decided in some of these cases dealing with the confidentiality provision of the ADA. Yes. And it allows the employer to inquire further. And I would also mention, Your Honors, that for almost 30 years that the EEOC has recognized the lawfulness of Indy Fairmont's termination of Mr. Sigley's employment under these circumstances. I understand that the EEOC guidance is not controlling, but it is persuasive. They have a technical assistance manual that asks, what if an employee provides false information about his or her health, physical condition? And the EEOC answered, an employer may refuse to hire or may fire a person who knowingly provides a false answer to a lawful post-offer inquiry about his or her condition or worker compensation history. We've heard today there's no dispute he lied. And we heard today it was confirmed that he was told that he was fired because he lied. If he's trying to expand and say this should be governed by some kind of burden-shifting framework, well, that's gone too because we have a legitimate non-discriminatory reason for firing Mr. Sigley. His falsification, his lying. And we've heard today that they concede that, so therefore they are not even able to show pretext. So under all circumstances. In reading his briefs, I don't understand him to have made a pretext argument. At step three, you just brought it up. I don't understand any of his briefing below or here to say, even if they can fire him for lying and even if that's permitted to inquire and all of that, that we still think that they're just making that up. I don't understand there to be a separate pretext argument. I don't either. I think I follow what you're saying. You just brought it up. I want to make sure I was okay. Yeah. In his brief, I would mention, Your Honors, that Mr. Sigley cites to three out-of-circuit cases. I would highlight the fact that none of those cases deal with the issue here where the information at issue was voluntarily disclosed by the employee. And one of them actually dealt with a separate provision of the ADA confidentiality requirements for an examination at a different time period. I don't, unless Your Honors have any more questions. See, you're not mandated to take all your time. Yeah. Yeah. I mean, I think this case is simple. I think this case is simple, Your Honor. He lied. It was a lawful post-offer examination. There was no dispute that that was lawful. There was no dispute that the questions he was asked in that was lawful. There was no dispute that he voluntarily disclosed his medical condition and history to Indy Fairmont. And there was no dispute that he lied. There was also no dispute that Indy Fairmont terminated him for lying. We heard today he wasn't fired because of a disability. We heard it today. Even from Mr. Sigley's counsel, he conceded he was fired because he lied. Thank you, Your Honors. Thank you, Mr. Gray. Mr. Glazer. Yes, Your Honor. I'll be brief. I understand the justice see it. And I don't want to belabor this issue. It's our position, it's been our position, that the reason they gave, the reason they gave, we fired him because he lied, that is embedded. That is an improper medical inquiry. That's it. And the bottom line is, you can read through their briefs, you can read through my briefs. There is not a single case that I have found or that they have cited that specifically allows this to happen. Now, as far as the misconduct issue, I submit to you that Hennepin is not the same situation as this case. When you talk about misconduct on the job, we think of traditional situations where people may show up intoxicated, there may be violence, there may be flouting rules. In this case, the misconduct is they said that he should have answered that question in the affirmative, and that was misconduct when he didn't. And our position is that when he's working there and they ask him if he disclosed, at that point that is an improper medical inquiry. They just can't ask him that. And the reason is because the ADA protects everybody from unlawful stereotyping. In other words, if we think somebody has workers' compensation injuries, or we know, and we're afraid they're going to cause an accident at work, Congress has recognized you can't use that as a reason not to hire them. Because that's a stereotype. Someone who's injured is going to pose a health hazard or a safety hazard. That's why we have the law. And in this case, Mr. Sigley, and I don't think they've argued otherwise, Mr. Sigley was doing his job. He'd been doing it well. There was not an issue with his job performance. Let's make that clear. This only came up, interestingly, because he told his employer, listen, I wasn't able to sleep well last night. I need some time off. Because he was, ironically, honest about his inability to work, he now finds himself here. There is irony that he was honest. I agree with that. It occurs in the direction you want it to be. I understand that. I realized as I was saying that I understood the irony within irony. But I'll be brief. I submit to you that this may be a result that the court may not like. But under the law, the law protects people from having their medical histories inquired to. It protects us all. And the bottom line, at the end of the day, is if there were any concerns, if there were any worries, there was a right way to do this and there was a wrong way. And the law allowed for them to do it the right way. So I will cede my further time. I appreciate the court's opportunity to let me argue. Thank you. Thank you, sir. Thank you. We appreciate you. Your Honors, I know that I had a couple minutes left. If you'd like me just to answer his one first question about, I will. If not, that's okay. You don't have any time left. All right. Thank you. We appreciate the services of both of you in this case. It's nice to have you here. It's always good to have good West Virginia lawyers in the court circuit. And we will come down, bring counsel and adjourn the court for the day and for the week. Signed, aye. This honorable court stands adjourned. Signed, aye. God save the United States and this honorable court.
judges: Robert B. King, Julius N. Richardson, Henry F. Floyd